[Cite as *In re J.H.*, 2020-Ohio-4796.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| IN THE MATTER OF: | JUDGES:<br>Hon. John W. Wise, P. J.<br>Hon. Patricia A. Delaney, J.<br>Hon. Craig R. Baldwin, J. |
| J.H., K.H., A.W. and R.W. | Case Nos. 2020 CA 00010, 00011, 00012 and 00013 |
| MINOR CHILDREN | O P I N I O N |

|  |  |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Court of Common Pleas, Juvenile Division, Case Nos. 2019 JCV 00991, 00992, 00993 and 00994 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | October 5, 2020 |

APPEARANCES:

| For Appellee | For Appellant Mother |
|---|---|
| JAMES PHILLIPS<br>STARK COUNTY DJFS<br>221 Third Street, SE<br>Canton, Ohio  44702 | TY A. GRAHAM<br>4450 Belden Village Street, NW<br># 703<br>Canton, Ohio  44718 |

*Wise, P. J.*

**{¶ 1}**  Appellant-Mother A.W. appeals from the judgment entered in Stark County Court of Common Pleas, Juvenile Court Division, which terminated all parental rights, privileges and responsibilities of the parents with regard to the minor children J.H., K.H., A.W., and R.W. and ordered that permanent custody of the minor children be granted to Stark County Department of Job and Family Services (SCJFS).

**{¶ 2}**  This appeal is expedited, and is being considered pursuant to App.R.11.2(C). The relevant facts leading to this appeal are as follows:

STATEMENT OF THE FACTS AND CASE

**{¶ 3}**  This appeal pertains to the permanent custody disposition of the four minor children of Appellant-Mother A.W.

**{¶ 4}**  On October 4, 2019, Appellee Stark County Job and Family Services (hereinafter "SCJFS") filed a permanent custody complaint alleging the abuse, dependency and/or neglect of J.H. (DOB 05/09/2012), K.H. (DOB 11/06/2013), A.W. (DOB 11/29/2014) and R.W. (DOB 08/17/2016).

**{¶ 5}**  R.H. is the biological father of J.H. and K.H.

**{¶ 6}**  R.W. is the biological father of A.W. and R.W.

**{¶ 7}**  On October 7, 2019, an emergency shelter care hearing was held where the trial court found probable cause for the involvement of SCJFS, and that SCJFS had made reasonable efforts to prevent the need for removal of the children from the home. The trial court also awarded emergency temporary custody of the children to SCJFS.

**{¶ 8}**  The concerns leading to these cases stem from history with the agency; previously removing the children and a two year case plan. The concerns in those prior

cases, 2017JCV01008, 2017JCV01009, 2017JCV01010, and 2017JCV01011, centered on lack of supervision, poor home conditions, substance abuse, domestic violence, and Mother allowing inappropriate individuals around her children. In the prior cases, all four of the children were found neglected on November 3, 2017. Mother did complete case plan services, and custody was returned to Mother on July 5, 2019. Agency involvement was terminated that same day. Both Goodwill Parenting Services, (In home), and NYAP were to remain active in the home after the closure.

{¶ 9}   However, unknown to either the ongoing caseworker or the Guardian-ad-Litem, Appellant-Mother had been involved in a domestic violence incident on June 29, 2019. According to the police report, Mother had been allowing Clarence O. to "hangout" at her residence and around her children. Clarence became aggressive and was told to leave the residence. He later returned and kicked the back door in to gain access to the residence. Clarence became more aggressive when Appellant-Mother refused to give him money. Appellant-Mother was then assaulted in what became an ongoing altercation throughout the home. Appellant-Mother eventually stabbed Clarence and fled to the children's bedroom. Appellant-Mother and the children then fled to the roof of the residence for protection. Responding officers found Appellant-Mother and all four children on the roof of the residence, screaming and crying. Clarence was located, arrested and charged with Aggravated Burglary.

{¶ 10} Appellant-Mother failed to report this incident to either the ongoing caseworker in the prior case or the trial court at the hearing held on July 5, 2019.

{¶ 11} The Agency learned of the incident on July 8, 2019. When confronted with this information, Appellant-Mother claimed that the children were in their bedroom and

did not see anything. Appellant-Mother also denied that Clarence O. was living with her and the children. However, Clarence reported to the responding officers that he did live at the residence. Additionally, the responding officers found clothing belonging to Clarence's daughter in a bag in the basement. Appellant-Mother later admitted to the staff at Goodwill Parenting that she was romantically involved with Clarence, and that her son J.H. came to the top of the stairs to ask if she was all right during the altercation. Appellant-Mother was uncooperative with Agency staff when confronted with the incident. She refused to bring the children to the Agency for an interview or for them to be interviewed alone. Appellant-Mother also made the statement that this incident was no big deal, and this was all "bullshit". All four of the children have indicated that they do not feel safe in the care of their Mother.

{¶ 12} Further, the children have disclosed that Appellant-Mother was allowing them to have phone contact with R.W., the father of A.W. and R.W., in violation of the no contact order placed at the end of the 2011 cases. The children indicated that Appellant-Mother intends to marry R.W. when he is released from prison. There is a history of domestic violence and substance abuse involving R.W.

{¶ 13} Additionally, A.W. was found to be suffering from a severe case of sunburn when he was removed, and K.W. had a wound on his buttocks that was diagnosed as a staph infection. Appellant-Mother had not taken either child for medical care for their injuries.

{¶ 14} On November 1, 2019, a pre-trial was held in the instant case and the case was set for an evidentiary hearing to be held on December 12, 2019, along with the permanent custody hearing. All prior orders remained in effect.

{¶ 15} On December 12, 2019, the trial court heard evidence on SCJFS's complaint seeking permanent custody of all four minor children.  The trial court chose to take evidence for both the adjudication and the grounds portion of the permanent custody together.

{¶ 16} The trial court first heard testimony from Stacy Dechellis, the supervisor in charge of Appellant's case for the past two and a half years. (T. at 10). Mrs. Dechellis testified that prior to the filing of this case, Appellant had been legally involved with the SCJFS in cases 2017 JCV01108 through 2017 JCV01111. (T. at 11). She stated that those cases were filed on August 16, 2017, and that the children were placed into the temporary custody of the SCJFS that same day. They remained in the temporary custody of the SCJFS until the cases were terminated on July 8, 2019. (T. at 11-12). She explained that a new complaint was filed on July 10, 2019, which had to be dismissed and refiled due to service issues. (T. at 12). The current complaint was then filed on October 4, 2019.

{¶ 17} Mrs. Dechellis testified that the new complaint was filed after it was discovered that Appellant-Mother was involved in a domestic violence incident with the children present. (T. at 14-15). Mrs. Dechellis testified that the concerns in the 2017 case centered on domestic violence concerns and substance abuse by Appellant-Mother. Appellant-Mother ended up stabbing the individual and having to have herself and the children escape to the roof of the residence. (T. at 15). The fire department had to respond to remove the children. (T. at 15).

{¶ 18} Appellant-Mother had a romantic relationship with this individual despite his history of violence. (T. at 15). Appellant-Mother concealed the incident from the Agency at the hearing, which terminated her case. (T. at 15). Appellant-Mother also did not think

the incident was a 'big deal' and called concern over it "bullshit" when confronted. *Id.* Mrs. Dechellis further testified that Appellant-Mother was violating a No Contact Order put in place between the children and R.W. due to his violent history. (T. at 18).

**{¶ 19}** The trial court next heard testimony from Chelsea Weigand, the ongoing caseworker assigned to Appellant-Mother's 2017 case and the current case. (T. at 32). Ms. Weigand testified that Appellant-Mother was provided with case plan services in the 2017 case that consisted of parenting assessment, substance abuse assessment and treatment, drug testing, mental health treatment, and parenting classes. (T. at 36-37). Appellant-Mother did complete the services. However, despite over two years of services, she was still unable to recognize and prevent her children from being placed in dangerous situations. (T. at 37, 40). Ms. Weigand testified that Appellant-Mother had also indicated to her that the incident was not a "big deal" despite it being a big deal to her children. (T. at 38). Ms. Weigand further testified that she did not see any benefit from giving Appellant-Mother more time to work on case plan services under the new case. (T. at 39). She testified that despite having received over two years of services, Appellant-Mother is still not able to keep her children safe. (T. at 39-40).

**{¶ 20}** The trial court next heard testimony from Carrie Schuring, who was stipulated to by all parties as an expert witness. (T. at 51-52). Ms. Schuring completed trauma evaluations on some of the children at issue in the cases. (T. at 52). Ms. Schuring testified that the children talked about seeing blood during the domestic violence incident and believing their Mother was going to be killed. (T. at 54). One of the children referred to the individual stabbed by Appellant-Mother by the name of "Hoody" and that he had been around before and was someone known to him. (T. at 55). One child described a

song that "Hoody" would sing at Appellant-Mother's home about murdering people with a gun. (T. at 55). Ms. Schuring testified that she diagnosed the children she examined with post-traumatic stress disorder and recommended counseling. (T. at 50-58).

{¶ 21} The trial court next heard testimony from Amy Humrighouse, who was the in-home parenting instructor from Goodwill Industries. (T. at 64). Ms. Humrighouse worked with Appellant-Mother from February 14th until July 9th. (T. at 65). She testified that Appellant-Mother only completed one out of six goals set for her. *Id.* She further testified that Appellant-Mother's home was extremely messy, with a lot of clutter. (T. at 66). She stated that Appellant-Mother was not able to consistently maintain a safe home. (T. at 67). She testified that the children's behaviors were out of control, and that they were physically violent with each other. (T. at 68). Ms. Humrighouse testified that Appellant-Mother did not successfully complete the program, and that she did not recommend the children be returned to Appellant-Mother. (T. at 65, 68).

{¶ 22} The trial court took testimony during the Best Interest part of the hearing from Caseworker Chelsea Weigand. Ms. Weigand testified that the children are all being set up with counseling to deal with their post-traumatic stress disorder which was diagnosed through their trauma evaluations. (T. at 80). The children were all placed together with their current foster parents during the 2017 case and are extremely bonded to them. (T. at 81). The children seek comfort from their foster parents and have stated that they want to stay with them forever. *Id.* Ms. Weigand further testified that the children are extremely afraid of Appellant-Mother and would scream and cry if they thought the caseworker was taking them back to their Mother. (T. at 83). Any bond between Appellant-Mother and the children is small. Ms. Weigand testified that she believed the benefit of

permanent custody outweighed any harm that might be caused by breaking any bond the children may have with Appellant-Mother. *Id.* Ms. Weigand testified that she believed it was in the children's best interest for permanent custody to be granted. (T. at 84). Appellant-Mother also stated that she knew it was in the children's best interest for them to be adopted by the foster parents. (T. at 85).

{¶ 23} Attorney Kristen Guardado, Guardian ad Litem for the children, briefly made a statement and recommended that permanent custody of all four minor children be granted to SCJFS. (T. at 89).

{¶ 24} The trial court took the matter under advisement, and on December 16, 2019, the trial court issued its findings of fact granting permanent custody of all four of the minor children to SCJFS and terminating Appellant-Mother's parental rights. The trial court found that the children could not and should not be placed with Appellant-Mother at this time or within a reasonable period of time, that the children had been in the temporary custody of the Agency for more than 12 of 22 months, and that permanent custody was in the children's best interest.

{¶ 25} Appellant-Mother now appeals, raising the following assignments of error:

ASSIGNMENTS OF ERROR

{¶ 26} "I. THE TRIAL COURT'S JUDGMENT THAT J.H. (DOB 05/09/12), K.H. (DOB 11/06/13), A.W. (DOB 11/29/14) AND R.W. (DOB 08/17/16) CANNOT BE PLACED WITH APPELLANT WITHIN A REASONABLE PERIOD OF TIME WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

A. THE TRIAL COURT ERRED IN FINDING APPELLANT MADE REASONABLE AND DILIGENT EFFORTS TO PREVENT THE NEED FOR

PLACEMENT AND/OR MAKE IT POSSIBLE FOR THE CHILDREN TO RETURN HOME.

**{¶ 27}** "II. THE TRIAL COURT'S JUDGMENT THAT THE BEST INTERESTS OF THE MINOR CHILDREN WOULD BE SERVED BY GRANTING PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

I., II.

**{¶ 28}** We address Appellant-Mother's assignments of error together. In her first assignment of error, Appellant-Mother argues the trial court erred in awarding permanent custody to SCJFS because SCJFS failed to demonstrate that the minor children could not be placed with her within a reasonable period of time. In her second assignment of error, Appellant argues the trial court's finding that an award of permanent custody to SCJFS is in the children's best interest is against the manifest weight of the evidence. We disagree.

**{¶ 29}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries,* Stark App. No. CA5758 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶ 30}** R.C. §2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. §2151.414(A)(1) mandates the trial court

schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶ 31} Following the hearing, R.C. §2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶ 32} In determining the best interest of the child at a permanent custody hearing, R.C. §2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶ 33} Therefore, R.C. §2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. §2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶ 34} Here, R.C. §2151.414(B)(1)(d) applies as the children have been in the temporary custody of the Agency for twelve or more months of the consecutive twenty-two month period.

{¶ 35} If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. §2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. §2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶ 36} As set forth in detail in our statement of the facts and case, *supra*, Appellant-Mother failed to successfully complete her case plan. She continues to engage in behavior and place her children in situations that are unsafe. The trial court further found that Appellant-Mother is unable to remedy the problems that led to removal of the children. The court was unable to find that she will remedy these problems within a reasonable period of time.

{¶ 37}  As to best interests, the GAL and Caseworker Weigand testified to their opinions that permanent custody to SCJFS was in the children's best interest. The trial

court found that all of the children had been diagnosed with post-traumatic stress disorder, and that they were undergoing counseling at school. K.H. has a speech delay but is receiving services for it at school. The court further found that all four of the children are placed with the same foster family, are bonded with their foster parents, and that they call them mommy and daddy. It is the children's wishes to remain with their foster family. The children feel safe with their foster family. The children do not feel safe with Appellant-Mother.

**{¶ 38}** J.H. and K.H. have no bond with their biological father, R.H. Father R.H. appeared at the permanent custody hearing and knowingly and voluntarily agreed to relinquish all of his parental rights to J.H. and K.H. to SCJFS. R.H. is currently incarcerated.

**{¶ 39}** A.W. and R.W. have no bond with their biological father, R.W. Father R.W. appeared at the permanent custody hearing.  R.W. is currently in prison for charges arising out of Coshocton County. He has been incarcerated for the length of this case. R.W. is not scheduled to be released until October of 2020. Due to his incarceration, the father is unable to adequately care for A.W. or R.W. or attend to their needs. During the previous case and this case there was/is a no contact order in place between R.W. and the children A.W. and R.W.

**{¶ 40}** Further, the children had been in the temporary custody of the SCJFS for twelve or more months of a consecutive twenty-two month period.

**{¶ 41}** The evidence presented at the hearing demonstrated that permanent custody to SCJFS is therefore in the children's best interest.

{¶ 42} Based upon the forgoing, we overrule Appellant's first and second assignments of error.

{¶ 43} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is affirmed.

By: Wise, P. J.

Delaney, J., and

Baldwin, J., concur.

JWW/k 1001